

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 12, 2022

**BY ECF and EMAIL**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. William Drayton*, 22 Cr. 91 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter in opposition to defendant William Drayton's motion for pre-trial release in the above-captioned case. As explained in greater detail below, the Government's ongoing investigation has revealed that Drayton's role in this deadly narcotics conspiracy—which, in a single day, sold fentanyl-laced cocaine to three victims (the "Victims"), causing their deaths—went beyond a mere courier. Drayton presents a danger to the community and a substantial risk of non-appearance, and he has not rebutted the Indictment's presumption in favor of detention.

**I.**  **Background**

    **A.**  **The Complaint and Arrests**

    On February 1, 2022, Drayton and his co-defendants Billy Ortega and Kaylen Rainey were arrested pursuant to a criminal complaint (the "Complaint") charging them with narcotics conspiracy resulting in death, in violation of Title 21, United States Code, Section 846 and 841(b)(1)(C).[1] (Dkt. 1). On February 10, 2022, the grand jury sitting in this District returned indictment 22 Cr. 91 (RA) (the "Indictment") charging the defendants with the same charges contained in the Complaint. (Dkt. 12).

---

[1] Drayton is charged with participating in the conspiracy but not with causing the deaths. Ortega and Rainey are charged with death-resulting. While Drayton is not currently charged with an offense carrying a mandatory minimum sentence, the Government anticipates superseding with one, as discussed further below.

1. **Overdose Deaths of Victims Julia Ghahramani, Amanda Scher, and Ross Mtangi**

On March 18, 2021, NYPD officers and emergency medical personnel were called, separately, to Julia Ghahramani's and Amanda Scher's Manhattan apartments and to a Manhattan hotel room where Ross Mtangi was staying. All three Victims were found unresponsive and pronounced dead on the scene. Responding officers found translucent black baggies containing a white powdery substance at all three locations. The white powdery substance in the recovered baggies and/or drug paraphernalia at the scene tested positive for the presence of fentanyl and cocaine. Consistent with those lab results, the Office of the Chief Medical Examiner ("ME") determined that each of the Victims died from acute intoxication of the combined effects of fentanyl and cocaine.

Law enforcement reviewed Scher's and Ghahramani's cellphones and on several occasions, including on the day before their deaths, they communicated via text with the user of the telephone number 646-421-5555 (the "5555 Drug Dispatcher Phone") regarding drug deliveries. (*See* Compl. ¶¶ 7(a), (e)). As detailed in the Complaint, the Government's investigation identified Ortega as the user of the 5555 Drug Dispatcher Phone and the leader of the conspiracy.

Toll records show that this dispatcher phone called and texted Scher and Ghahramani after their drugs were delivered. One of the texts to Scher told her: "try not to do too much because it's really strong." In addition to texting the Victims after the drugs were delivered, the 5555 Drug Dispatcher Phone also made several calls to Scher and to Ghahramani but neither victim ever responded to the continued texts/calls from the dealer, likely because they had already died.

As shown in toll records for the 5555 Drug Dispatcher Phone, after Ortega made several attempted calls to Scher and Ghahramani—with the last attempted call occurring at approximately 12:26 p.m.—the next call that Ortega made was to 551-248-2481, used by Drayton (the "Drayton 2481 Phone"),[2] at approximately 1:45 p.m., and Ortega and Drayton exchanged additional relatively short calls over the course of that day. (*See* Compl. ¶ 13(a)(ii)).

The Complaint described how Drayton made narcotics deliveries on behalf of Ortega, including to Victims Scher and Ghahramani, on occasions other than March 17, 2021. (*See* Compl. ¶¶ 13-14).

B. **The Government's Ongoing Investigation After the Arrests**

The Government's investigation into the conspiracy is ongoing, including its review of seized electronic devices. As noted in the Government's opposition to Ortega's motion for pretrial release (Dkt. 16), the Government's preliminary review of Rainey's cellphone, seized at his arrest (the "Rainey 5039 Phone"), indicates that the conspiracy spanned multiple years, ceasing only at the defendants' arrests. The Government's review has also revealed that Drayton's role in the

---

[2] In addition to the reasons set forth in the Complaint, Drayton's cellphone was seized at his arrest, and his SIM card shows that the assigned number is 551-248-2481. Aside from the SIM card, the Government has not yet accessed the contents of Drayton's cellphone.

conspiracy went beyond a mere courier. As detailed further below, Drayton appears to have himself held drugs, supplied them to Rainey, and received the proceeds from the delivery service.

### 1. Messages Between Drayton and Rainey

Messages between the Rainey 5039 Phone and the Drayton 2481 Phone contain further evidence that the defendants were trafficking narcotics, including that Drayton appeared to maintain drugs at his Manhattan residence (while also at times residing in New Jersey, like Ortega) and supplied drugs to Rainey, including by using his mother as an intermediary.[3]

For example, on or about August 3, 2021, the following exchange occurred:

| | |
|---|---|
| Drayton 2481 Phone: | Yo I am stepping out but I need you to pick up something from my house |
| Rainey 5039 Phone: | I'm coming up |
| Drayton 2481 Phone: | Yo she gave you the wrong stuff<br>Where are you<br>Yo<br>Before you drop shit off<br>Answer<br>Yo<br>Wtf<br>So u don't see me calling or texting |
| Rainey 5039 Phone: | Nigga idgaf about nobody calling or texting me you ain't nobody i have to answer too first of all<br>Whatever she messed up gone have to wait a minute anyways |

Based on this and other messages, some of which are discussed below, the Government believes that Drayton and his mother have an apartment in the Fulton Houses, and that Rainey was living at the Fulton Houses in Ortega's family apartment.[4] Thus when Rainey says "I'm coming up," he is going to Drayton's apartment in the Fulton Houses, and the "she" appears to be Drayton's mother.

As another example, on or about May 18, 2021, the following exchange occurred:

| | |
|---|---|
| Drayton 2481 Phone: | Yo I am in my moms<br>I need you to get a zip car for the day |

---

[3] On numerous police reports, Drayton provided his address as an apartment on the 21st floor of 418 West 17th Street, New York, New York—in the Fulton Houses, a New York City public housing complex. Drayton's mother also lives at that address.

[4] Rainey provided that apartment as his address upon his arrest in this case.

|  |  |
|---|---|
|  | I need you to bring any work you have left and bring the chicken over also<br>ASAP<br>Did you get my tex |
| Rainey 5039 Phone: | Listen if you need something that bad you come get it yourself. I keep telling y'all I AM NOT ON NOBODY TIME BUT MY OWN! I have my own business to handle that i actually get paid for. Don't fucking do that shit!! |

In Drayton's text, the Government believes that "zip car" refers to a Zipcar (a type of rental car that the delivery conspiracy regularly used, often referring to it as a "zip"), "work" refers to narcotics, and "chicken" is slang for money.

### 2. Messages Between Rainey and Ortega Regarding Drayton

Similarly, messages between Rainey and Ortega show further instances where Drayton appears to have supplied Rainey with narcotics, and Rainey passed narcotics proceeds to Drayton. Two preliminary points, before turning to those messages, provide important context. First, Ortega used a variety of cellphones to communicate with Rainey, including: 646-421-5555 ("Ortega 5555 Phone"),[5] 646-853-6897 ("Ortega 6897 Phone"),[6] 646-945-5367 ("Ortega 5367 Phone"),[7] and 646-530-4115 ("Ortega 4115 Phone").[8] Second, Drayton appears to have been referred to, at times, as "daddy" or "lover boy" in these messages—also used or suggested in messages between Drayton and Rainey as referring to Drayton.[9]

---

[5] 646-421-5555 is referred to above and in the Complaint as the 5555 Drug Dispatcher Phone.

[6] 646-853-6897 is the "day phone" listed on Ortega's kingbilly0812 iCloud account described in the Complaint.

[7] The Ortega 5367 Phone messages the Rainey 5039 Phone for the first time on or about March 19, 2021—that is, shortly after the three overdose deaths. When the Rainey 5039 Phone asked the Ortega 5367 Phone "Who is this?", the Ortega 5367 Phone responded: "Billz".

[8] 646-530-4115 is the number assigned to a cellphone seized from Ortega's residence at his arrest.

[9] For example, on or about November 30, 2018, the Rainey 5039 Phone wrote to the Drayton 2481 Phone: "GoodMorning daddy". As another example, on August 17, 2020, the Drayton 2481 Phone wrote to the Rainey 5039 Phone: "Yes cuz I am daddy I am boss".

While "lover boy" does not appear in the messages Rainey and Drayton, there are messages indicative of a (real or playful) romantic relationship. For example, on or about November 5, 2018, the Rainey 5039 Phone wrote to the Drayton 2481 Phone: "Smh clearly you cheating cuz idk where you been at. Still no call or nothing and i told you i need to go to the store". As another example, on or about November 22, 2018, the Rainey 5039 Phone wrote to the Drayton 2481 Phone: "You don't love me anymore."

*First*, Rainey appears to have been supplied at times by Drayton, who maintained narcotics in his Fulton Houses residence, as indicated in the following text message examples.

On or about October 17, 2020, the Ortega 5555 Phone and the Rainey 5039 Phone have the following exchange regarding drug deliveries and obtaining additional narcotics from Drayton's apartment in the Fulton Houses:

| | |
|---|---|
| Ortega 5555 Phone: | [street number] W 37, 6K 2will 300$ |
| | [street number] Bleecker Street, 1will 200$ |
| | [street number] 6th Ave Ny 1will 200$ |
| | [street number] 11th ave 1will 200$ |
| | [street number] East 82 st 1m 1will 300$ |
| Rainey 5039 Phone: | I only have 5 will left |
| | I'm going over there |
| | What floor he on again? |
| Ortega 5555 Phone: | 21 |
| Rainey 5039 Phone: | I'm coming up |
| | He coming out or his mom? |
| Ortega 5555 Phone: | Mom |
| Rainey 5039: | I'm here |
| Ortega 5555 Phone: | Cool he's calling her |
| | Let me know when she comes out |

The Government believes that in the first message Ortega sent Rainey information for five deliveries, one delivery per line: an address, followed by the ordered amount of narcotics (e.g., "2will" or "1m"), followed by the price to be paid. Rainey responded he does not have enough "will," which, based on voluminous text messages, is code for cocaine. Rainey then stated that he is going to Drayton's apartment in the Fulton Houses, which, as noted above in footnote 3, is located on the 21st floor (Rainey: "What floor he on again?" Ortega: "21"). The messages further indicate that Drayton used his mother to assist in the narcotics conspiracy.

On or about May 24, 2021, the Ortega 4115 Phone texted the Rainey 5039 Phone that Ortega has a client, and the following exchange occurs:

| | |
|---|---|
| Rainey 5039 Phone: | Copy |
| | Im going up to wills now |
| Ortega 4115 Phone: | Cool |

    Rainey 5039 Phone:   Im
                                          Knocking
                                          No answer

    Ortega 4115 Phone:   He's coming to the door now

The Government believes that "wills" refers to William Drayton's (Will's) residence, where Rainey appears to go to obtain drugs for delivery to the client.

On or about May 31, 2021, the Ortega 4115 Phone has the following exchange with the Rainey 5039 Phone:

    Ortega 4115:   [street number] W. 20th St. 1red and 1q 500$

    Rainey 5039:   Ok

    Ortega 4115:   Yo
                                Happen with the client

    Rainey 5039:   Waiting for Will to give me the Q

The Government believes that "Will" refers to William Drayton, and that "1q" and "the Q" refer to narcotics that Rainey is obtaining from Drayton and then delivering to a customer ("client").

On or about May 17, 2021, the Ortega 5367 Phone messaged (via WhatsApp) the Rainey 5039 Phone: "hey go see your lover.. then [street number] Warren st 2k give him 6 red and 1 black 2k." The Government believes that "your lover" refers to Drayton, that "6 red" and "1 black" refers to narcotics that Rainey was obtaining from Drayton and then delivering, and that "2k" refers to a $2,000 payment by the customer.

On or about June 8, 2021, the Ortega 4115 Phone texted the Rainey 5039 Phone: "Hey in 5min 450 1red 300$ [/] Then run up to lover boy .. after that [/] [street number] 9ave 10 es 200$". The Government believes that "lover boy" refers to Drayton, from whom it appears Rainey will obtain narcotics ("10 es," perhaps 10 ecstasy pills) for delivery.

*Second*, Ortega appears to have directed Rainey to pass larger sums of drug money to Drayton.

On or about December 16, 2020, the Rainey 5039 Phone messaged (via WhatsApp) the Ortega 6897 Phone in part that he had "1845," meaning $1,845 in narcotics proceeds. Ortega responded: "Cool bro thank you .. hey pass your daddy 975 out of the 1845." The Government believes that Ortega instructed Rainey to provide over half of the narcotics proceeds to Drayton.

In a text exchange on or about March 7 to March 8, 2021, Ortega directed Rainey to pass profits to Drayton:

> Ortega 4115 Phone: Hey did she send you 1k
>
> Rainey 5039 Phone: Yeah
>
> Ortega 4115 Phone: Hey boss Total for the zip [car]
>
> Rainey 5039 Phone: $160
>
> Ortega 4115 Phone: Cool take 160 for zip and 100 for you bro
> And the 740 pass it to your daddy

The Government believes "your daddy" refers to Drayton, the recipient of the full $740 in profits after paying for a Zipcar ("160 for zip") and Rainey's delivery services ("100 for you").

Similarly, on or about May 18, 2021, the Rainey 5039 Phone texted the Ortega 4115 Phone: "100 Sunday [/] 1870 yesterday". The Ortega 4115 Phone responded "Thanks pa pass it to lover boy".

On or about May 25, 2021, the Ortega 4115 Phone and the Rainey 5039 Phone discussed another payment, in the below exchange. While Ortega instructed Rainey to hold the money,[10] the exchange provides further evidence that "daddy" is "[W]ill"—that is, William Drayton.

> Ortega 4115: Thanks bro They sending another 3K now to you
> Hold it I'll be out there in a few hey do you want to get a zip and pic me up
> [gif]
>
> Rainey 5039: [gif]
>
> Ortega 4115: Come on you can do it
>
> Rainey 5039: Lol im out and about for a bit
> Tell daddy lol
> Knocking
> No answer
>
> Ortega 4115: Ok cool can you get him the zip then ? lol
>
> Rainey 5039: Lmao
> For when?
>
> Ortega 4115: Hey
> For now So the whole day

---

[10] Notably, Rainey appears to have assumed that the recipient would be Drayton. On or about May 29, 2021, the Rainey 5039 Phone asked the Ortega 4115 Phone: "Al [Am] i giving daddy the 3k?" and the Ortega 4115 Phone responded, "Hold it."

      Rainey 5039:  I'll check for something

      Ortega 4115:  [gif]
                            Hey whats the word

      Rainey 5039:  Im not around to give will the card

The Government believes that Rainey and Ortega were discussing a Zipcar ("zip") that could be used to pick up Ortega. Rainey told Ortega to have Drayton ("daddy") pick up Ortega instead. Rainey thereafter said he is not available to pass the Zipcard (i.e., the card used to rent Zipcars) to Drayton ("Im not around to give will the card").

## II. <u>Applicable Law</u>

The Government ultimately bears the burden of showing by a preponderance of the evidence that the defendant poses a risk of flight or, by clear and convincing evidence, that the defendant poses a danger to the community, and that no condition or combination of conditions can address those risks. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). However, when, as in this case, a defendant is charged with a controlled substance offense with a maximum term of imprisonment that is greater than ten years, as is the case in Count One, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).(B).

In assessing a defendant's risk of flight and the danger to the community presented by release, Congress directed courts to consider several factors: (1) the "history and characteristics of the person" including "family ties, employment, financial resources, length of residence in the community, [and] community ties"; (2) "the nature and circumstances of the offense charged"; (3) "the weight of the evidence against the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Title 18, United States Code, Section 3142(e) provides that if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the defendant shall be detained pending trial. 18 U.S.C. § 3142(e).

"Because the 'rules concerning admissibility of evidence in criminal trials do not apply' to bail hearings, *see* 18 U.S.C. § 3142(f)(2)(B), the parties may proceed by way of proffer, *United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000). As such, courts often base detention decisions on hearsay evidence and on factual material proffered by the Government. *United States v. Boustani*, 356 F. Supp. 3d 246, 251 (E.D.N.Y. 2019), *aff'd*, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019).

## III. <u>Discussion</u>

For the reasons explained below, the Section 3142(g) factors favor detention and the defendant cannot overcome the presumption of detention.

### A. The Section 3142(g) Factors Favor Detention

#### 1. The Nature and Circumstances of the Offense Charged

The defendant is charged with participating in a narcotics conspiracy that distributed drugs resulting in at least three overdose death. While the Complaint describes Drayton as a drug courier, evidence obtained following the defendants' arrests shows that Drayton was more. He was an integral member of the conspiracy. In addition to regularly making deliveries, Drayton provided drugs to Rainey, maintained a premises where drugs were kept (and appears to have directed his own mother to assist with the conspiracy), and received fairly substantial drug profits from Rainey at Ortega's direction.

To be sure, Drayton is not the leader of the conspiracy. The leader was Ortega. But this post-arrest evidence demonstrates that Drayton played an integral role beyond making deliveries himself, by maintaining a drug premises, supplying drugs, and receiving drug profits. And while Drayton is not charged in the causal chain of the three overdose deaths, that evidence still touches upon Drayton. Reflecting his status in the deadly conspiracy and potential involvement with the overdose deaths, the first outgoing call shown in toll records that Ortega made after failing to contact victims Scher and Ghahramani on March 18, 2021, was to Drayton.

The messages uncovered post-arrest also demonstrate that the weight of narcotics attributable to the conspiracy, which distributed drugs continuously over a span of years, would satisfy either 21 U.S.C. §§ 841(b)(1)(B) or b(1)(A) requirements for cocaine. Certainly prior to any trial, if not earlier, the Government will supersede with such a charge, which would carry a mandatory minimum sentence of either five or ten years' imprisonment, against Drayton. That prospect creates a strong incentive to flee.

Accordingly, the nature and circumstances of the offense weigh heavily in favor of detention on the basis of danger to the community and risk of flight.

#### 2. The Weight of the Evidence

As reflected in the Complaint, the weight of the evidence against Drayton was already strong. It has only become stronger. The phone seized from Drayton at his arrest was, in fact, the "2481 Phone" described in the Complaint and referred to herein as the "Drayton 2481 Phone." And damning messages with the Drayton 2481 Phone and among other co-conspirators show that Drayton played a significant role in the conspiracy, as described above.

#### 3. The History and Characteristics of the Person

Drayton has two prior criminal convictions and numerous arrests. The most recent conviction, as the defense notes, was for failing to pay subway fare in 2014. His 2012 conviction, however, was for criminal possession of a weapon in the fourth degree, in violation of New York Penal Law 265.01(1), for possessing a gravity knife (as set forth in the arrest report).

As noted, the defendant also has several arrests that did not result in convictions. For example, in 2005, the defendant was arrested for robbery in the second degree, for grabbing a victim from behind, striking the victim over the head, and stealing the victim's phone. In 2016, the defendant was arrested for possessing two baggies of suspected crack cocaine, which the defendant attempted to ingest before spitting the baggies out on the floor where they were recovered by police. Finally, and as described in the Complaint (Compl. ¶ 13(c)), in July 2020, the defendant was arrested in connection with a domestic dispute and breaking the door on his girlfriend's car; the arrest report further states that the defendant resisted arrest.

Viewing alongside the current charges against Drayton, this criminal history shows that the defendant has a complete lack of respect for the law.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community

The dangers associated with drug trafficking are well recognized—the crushing burden of addiction, the risk of deadly overdose (particularly from misbranded drugs and the spread of synthetic opioids like fentanyl), the omnipresent threat of violence. In this case, the deaths of three separate victims, at least two of whom Drayton had been personally delivering drugs to, makes those harms particularly apparent and visceral. Notably, Drayton, like Ortega, appears to have maintained a premises in Manhattan for dealing drugs while residing in New Jersey, and used a family member to assist in the drugs' distribution. In light of the foregoing and the defendant's apparent lack of respect for the law, his release poses a danger to the community.

### B. The Defendant Cannot Overcome the Presumption of Detention

For all of the reasons that the 3142(g) factors favor detention, the defendant cannot overcome the Indictment's presumption of detention.

## IV. Conclusion

For the reasons stated above, the Government respectfully submits that the defendant should be detained pending trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Micah F. Fergenson / Michael R. Herman
Assistant United States Attorneys
(212) 637-2190 / -2221